bln this concursus proceeding, the appellant, LTA, Inc. (LTA), appeals the trial court’s judgment in favor of Chevron USA, Inc. and Huntington Beach Company (collectively Chevron), entitling Chevron to money deposited into the registry of the trial court. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

On June 14, 2010, Chevron entered into a purchase and sale agreement (PSA) with Keiichi-Mar Investing, LLC (Keiichi-Mar) for the building and associated parking structure (hereinafter referenced collectively as “the building”) located at the corner of O’Keefe Avenue and Gravier Street.[1] Keiichi-Mar signed the PSA on June 9, 2010. The contract was accepted by Chevron on June 14, 2010. Under the terms of the PSA, Keiichi-Mar was required to issue a $300,000.00 deposit after Chevron accepted and signed the agreement.[2] On June |⅞18, 2010, Stewart Title deposited a $300,000.00 check issued by LTA, which was not a party to the PSA, in its commercial escrow account.
A dispute over the deposit arose between Chevron and LTA, and eventually the deal fell apart. As a result, Stewart Title deposited the money into the registry *871 of-the court and initiated a concursus proceeding. The trial court subsequently granted Chevron’s motion for summary judgment finding that “the facts supported the conclusion that LTA intended its check to be used and considered as Keiichi-Mar’s deposit.” LTA appealed and this Court reversed finding that there was a genuine issue of material fact as to whether LTA intended the $300,000.00 check to be used as a deposit for Keiichi-Mar under the PSA. ' -
After a trial on remand, the court rendered a judgment in favor of Chevron and awarded it the $300,000.00 from the registry of the court. 'In its reasons for judgment, the trial court found that LTA deposited the check into Stewart Title’s escrow account, intending it to serve as the deposit under the PSA between Chevron and Keiichi-Mar; thus, Chevron was entitled to the deposit as liquidated damages under the PSA. This appeal follows.

STANDARD OF REVIEW

In reviewing a trial court’s findings of fact, appellate court’s employ a “manifest error” or “clearly wrong” standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Id. “Where there are two ^permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. Moreover, when findings of fact are based on determinations regarding “credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Id. See also Pelleteri v. Caspian Grp. Inc., 02-2141, 02-2142, pp. 6-7 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1235.

DISCUSSION

Although LTA raises various issues in its assignments of error, there is only one issue before the court: whether the trial court erred in concluding that “LTA, acting through Kenneth L[o]bell, deposited $300,00.00 of its own money into Stewart Title’s escrow account with the intent that it be tied to the PSA between Chevron U.S.A., Inc. and Keiichi-Mar Investing as the Initial Deposit.”
The facts in this case are largely undisputed. On June 10, 2010, during the course of negotiating the PSA, after Keii-chi-Mar had signed but before Chevron had accepted, LTA delivered a $300,000.00 check to Ms. Sharall Grissen, Chief Operating Officer of Stewart Title, the company chosen to close the sale. The check referenced “Chevron Bldg” on the memorandum line. Ms. Grissen then emailed representatives for Keiichi-Mar and informed them that she received the earnest money “as stated in the contract.” Ms. Grissen testified during her deposition that Kenneth Lobell instructed her to send the email to Keiichi-Mar.
As of June 17, 2010, Keiichi-Mar had not made the required $300,000.00 deposit; therefore, Chevron threatened to cancel the agreement unless the deposit required under the contract was made before noon the following day. | ¿Stewart Title deposited LTA’s $300,000.00 check into its commercial escrow account, without designation, the following day. At that time, a communication was sent to Edward Ru-benstein, Senior Real Estate Project Manager for Chevron, from Joyce DuSaules, who presented him with proof that the *872 “earnest money” was received. Ms. Du-Saules, an employee at Stewart Title, sent the email at Ms. Grissen’s direction. She also stated that that when sending the email, she was notifying Chevron that the deposit under the PSA had been received, because it was her assumption that the money served as the deposit under the contract. Ms. Grissen testified in her deposition that Mr. Lobell instructed her to deposit the check and to communicate with Chevron regarding the receiving, the deposit. As a result of Stewart Title’s communications, the parties, Chevron and Kei-ichi-Mar, continued toward closing the sale.
On June 28, 2010, the day before any deposit under the PSA would become nonrefundable, LTA requested that Stewart Title return the funds it had previously deposited into its commercial escrow account. Stewart Title promptly issued a refund, and notified Chevron of the refund in writing.
On Juiy 1, 2010, after learning that LTA received a refund, Keiichi-Mar sent a notice to Chevron explaining that the contract was still in full force and effect, and Stewart Title had wrongfully released the deposit money. Keiichi-Mar also stated that it would ensure additional funds were placed into escrow with another title company. In response, counsel for Chevron immediately emailed Stewart Title, notifying it that the agreement was still valid and that the deposit money was erroneously released. Consequently, Stewart Title placed a stop payment on the refund check on or around July 1, 2010. On July 19, 2010, one day after Keiichi-Mar was supposed to have closed the sale, Chevron | ^rescinded the agreement due to Keiichi-Mar’s breach. One day later, Stewart Title initiated the concursus proceedings.
In terms of the intent issue, Mr. Lobell testified that when delivering the check, he gave explicit verbal instructions to Ms. Sharall Grissen not to attach the money to the PSA.[3] He stated that his intent in depositing the check with Stewart Title was to use it to purchase the building if Keiichi-Mar defaulted under their agreement with Chevron. However, Mr. Lobell also admitted that he was not opposed to fronting the deposit for Keiichi-Mar, but only if he received an assignment under the PSA. The fact that LTA never received an assignment is undisputed.
Despite the testimony that the LTA check was not meant to be assigned to the PSA, the totality of the evidence at trial largely supports the opposite conclusion. Mr. Rubenstein confirmed that Mr. Lobell agreed to supply the deposit money for Keiichi-Mar if LTA received a letter it deemed necessary to protect its interest. He stated that when he was informed by Stewart Title that the deposit was received, he assumed that Mr. Lobell obtained the documentation necessary to move forward with providing the deposit for Keiichi-Mar,
The documentary evidence along with the timing of the deposit and refund are indicative of LTA’s intent to connect its deposit with the PSA, regardless of the lack of such a designation, Kenneth Lo-bell and Stewart Title’s conduct are also consistent with this position. Particularly telling is Stewart Title’s communication to Chevron that it received the deposit, especially considering that Ms. Grissen | (¡indicated that she communicated information regarding the deposit at Mr. Lobell’s direction. Likewise, the fact that Stewart *873 Title stopped payment on the refund check and initiated a concursus proceeding the day after the PSA was cancelled indicates that the money was associated with the PSA. Given that the evidence strongly supports the trial court’s factual decision, we find that the trial court’s ruling was appropriate.
LTA suggests that the trial court recognized a mandatary relationship between itself and Keiichi-Mar; however, this inference is unsupported by the record. In its reasons for judgment, the trial court observed that Mr. Lobell interacted with Chevron as an intermediary on behalf of Keiichi-Mar. The term “intermediary” is defined as “a mediator or go-between; a third party negotiator.” Black’s Law Dictionary 890 (9th ed.2009). Thus, the trial court’s observation is not a legal finding that an agency or mandatary relationship existed. Since there is no evidence that such a relationship existed between LTA and Keiichi-Mar, the laws of mandate are inapplicable despite LTA’s claims to the contrary.
As set forth by Chevron, this case is governed by contract laws. In particular, La. C.C. art. 1855 states, in pertinent part: “Performance [of an obligation] may be rendered by a third person, even against the will of the obligee, unless the obligor or the obligee has an interest in performance only by the obligor.” Though the parties to the PSA were Chevron and Keii-chi-Mar, there was no restriction that would bar LTA from supplying the deposit money on behalf of Keiichi-Mar. However, this in no way affected the terms of the PSA. Therefore, Chevron was entitled to the deposit based on Keiichi-Mar’s default under the contract. Accordingly, the judgment is affirmed.
AFFIRMED.

. The building and parking structure had separate municipal addresses. The building was located at 218 O’Keefe Avenue, and the parking structure 935 Gravier Street.

. The deposit would become non-refundable after 5:00 p.m. on the final day of the inspection period, June 29, 2010.

. Ms. Grissen and Ms, DuSaules both confirmed in their depositions that this was Mr, Lobell's instruction. However, Ms, Grissen also indicated that the check was held for one week and later deposited upon Mr, Lobell's instruction,