| EUGENIE DABEZIES TRELO | * | NO. 2019-CA-0664 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| CONRAD G. COLLINS, JR. | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-09052, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**JAMES F. MCKAY III**
**CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Daniel L. Dysart,
Judge Dale N. Atkins)

GILBERT R. BURAS, JR.
ATTORNEY AT LAW
710 Carondelet Street
New Orleans, Louisiana 70130
     COUNSEL FOR PLAINTIFF/APPELLANT

ERIC A. BOPP
WALTER R. WOODRUFF, JR.
TYLER S. LOGA
EDWARD S. BOPP - A LAW CORPORATION
101 Brookside Drive, Suite 101
Mandeville, Louisiana 70471
     COUNSEL FOR DEFENDANT/APPELLEE

AFFIRMED

**JANUARY 29, 2020**

Plaintiff, Eugenie Dabezies Trelo ("Eugenie"), seeks an appeal from the December 27, 2018 judgment, dismissing her action filed against defendant, Conrad G. Collins Jr. ("Conrad"). For the reasons set forth below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Eugenie is one of five adult children (Louise, Eugenie, Elizabeth, Constance, and Oliver) of Dr. Oliver H. Dabezies, Jr. ("Dr. Dabezies")[1] and Mrs. Carroll Dabezies ("Mrs. Dabezies")[2]. On January 13, 2003, Mrs. Dabezies executed an Act of Procuration naming her son, Oliver, and her brother, Conrad, as co-mandataries. The Act of Procuration states, in pertinent part, that Mrs. Dabezies authorizes her agent "to make *inter vivos* donations, especially to continue Principal's annual gift giving program to her family."

In 2011, Eugenie filed a lawsuit against her uncle Conrad, alleging that she was excluded from her mother's annual gift giving program for a number of years as a result of Conrad taking the monetary gifts meant for her. The petition asserts that the annual gifts were made to her four siblings and Conrad, but not to her. It further asserts that Conrad induced Mrs. Dabezies to exclude Eugenie from the

---

[1] Dr. Dabezies died in 2001, at the age of 70.
[2] Mrs. Dabezies has Alzheimer's and resides in an assisted living home. The record does not reflect the exact date, but Mrs. Dabezies was interdicted sometime after 2005.

1

annual gift giving program, based upon Conrad's misrepresentation that Eugenie was financially indebted to Conrad. Alternatively, the petition avers that Conrad, on his own initiative, excluded Eugenie from the annual gifts and took those sums of money for his own use in violation of his duties as co-mandatary.

The matter came for trial on April 23, 2018. The trial court heard testimony from Eugenie and Oliver. Conrad did not appear at trial, but his 2012 deposition was introduced into evidence.

Eugenie testified that for many years before her father's death, he made annual monetary gifts to all five children, equally. She stated that in 2010, she discovered for the first time that her four siblings continued to receive the annual gifts from her mother, but that she had been excluded. Eugenie believed that her uncle Conrad took her annual gifts because he claimed Eugenie owed him money in connection with a failed business venture in the early 1990's.

Regarding the business venture, Eugenie testified that she was only a "figurehead owner" in the company, Advanced Materials, and that her then boyfriend, Donald Little ("Donald"), and Conrad incurred all the bank loans for the business. On cross examination, Eugenie conceded that she started the business with Donald, but denied any of the indebtedness on the loans when the business failed.

Oliver, a senior vice president at First Bank and Trust, testified on behalf of his uncle Conrad. Contrary to Eugenie's assertions, he denied that their father ever gave annual monetary gifts to the five children during his lifetime. He explained that one of the things his mother inherited was Dr. Dabezies' Individual Retirement Account (IRA). After Dr. Dabezies' estate was probated in 2004, Mrs. Dabezies was obligated to annually take money out of the IRA and pay taxes on the required

2

minimum distribution. Because she did not need the income from the IRA, she decided to start making annual gifts to the family. Oliver was certain that Mrs. Dabezies started the gift giving program in 2004, shortly after the Procuration was executed.

Oliver identified the first gift giving checks that were issued in 2004 and 2005, which Mrs. Dabezies personally signed. In those two years, the four Dabezies children (excluding Eugenie), and Conrad each received $11,000.00. Oliver testified that he started signing the checks in 2006, because his mother was no longer able to manage her affairs. In 2006, 2007, and 2008, Oliver issued checks in the amount of $12,000.00 to the four Dabezies children (excluding Eugenie), and to Conrad. He stated that he excluded Eugenie and included Conrad only because he wanted to continue what his mother had been doing on her own. Oliver explained that there were no parameters set out for the gift giving program. The Procuration only stated there was to be gift giving "to the family." No gifts were given in 2009 because of a downward turn in the market. In 2010, Oliver issued checks to the four children (excluding Eugenie) and to Conrad in the amount of $13,000.00. From 2011, through 2018, Eugenie received annual gifts equal to that of her four siblings (totaling $111,000.00). Conrad was excluded in those years. In total, Conrad received $71,000.00 through the gift giving program. Copies of the gift giving checks were introduced into evidence.

Oliver testified that he knew Conrad paid off the debt for Eugenie's failed business, and he knew that his parents were aware of that fact. He was present during discussions with his parents and Eugenie where Dr. Dabezies proposed to pay off Eugenie's debt to Conrad if she apologized to Conrad and agreed that the payment would be an advance on her inheritance. Eugenie refused that offer.

3

Oliver was aware that the debt owed by Eugenie to Conrad was the basis for his mother's gifts to Conrad instead of Eugenie. When Conrad was paid in full the gifts to him stopped; that was his mother's intention.

Conrad testified in his October 30, 2012 deposition that he took no part in the financial aspect of the gift giving program. He stated that Mrs. Dabezies' CPA, John Cavaroc, determined the amount of the gifts and the recipients. Conrad knew that there were years where all the Dabezies children (except Eugenie) got a check, but he did not know the exact reason why.

Conrad further stated that around 2002, while Mrs. Dabezies was still living at home, she told Conrad that she felt morally obligated to compensate him for the money he lost in Eugenie's business. For that reason, she wanted to give him a gift for a number of years. She did not mention anything at that time about Eugenie not getting gifts. It was only later that Conrad realized that the funds for his gifts would be created by not gifting Eugenie.

Conrad explained the failed business venture with Eugenie as follows: Advance Materials was a company started by Eugenie and her fiancé Donald. The company had a U.S. government contract to develop cooling mats for the military. Conrad, having an engineering background, later joined the company as a shareholder to help grow the business. Conrad disputed Eugenie's assertion that she was simply a figurehead for the company. Conrad and two other engineers began working to develop cooling backpack systems and a mini diesel engine for the army. This was just prior to Desert Storm. He stated that he was not involved in the day-to-day operations of the business. As start-up capital, Conrad put between $15,000.00 and $20,000.00 of his own money into the business. Conrad also gave Eugenie his paychecks from the government contract (totaling around

4

$20,000.00) because she claimed she needed money to keep going. He wanted her to succeed. Additionally, Conrad and Donald signed a loan with Whitney Bank for $150,000.00. Eugenie's name was on the loan but she would not sign. Instead, she promised to pay Conrad her third of the debt (out of stocks she owned) if the business went bust. Eugenie later borrowed $40,000.00 from the Whitney Bank. After a government audit, Advance Materials lost the pending contracts. The business failed, and the loans were called in. Conrad mortgaged his home to pay the $190,000.00 that was owed to the Whitney Bank.

The November 17, 2010 letter from Mr. Cavaroc (Mrs. Dabezies' C.P.A.) to Keith A. Doley, Attorney at Law, showing a list of the annual gifts for the years 2004 through 2008, was introduced into evidence. The list reflects that the four Dabezies children and Conrad received checks in those years, but that Eugenie was excluded. Mr. Cavaroc states in the letter that the gifts to Eugenie were paid to Conrad "on her behalf in repayment of the debt owed to him by her."

Mrs. Dabezies' last will and testament was introduced into evidence over Eugenie's objection. It states in part that "[m]y daughter, Eugenie, has a debt of $70,000.00 to my brother, Conrad Collins. If this debt is not paid in full at the time of my death, then I direct my Executors to pay the balance of that debt to Conrad Collins, and take that amount out of Eugenie's share in my estate."

The matter was taken under advisement, and judgment was rendered on December 27, 2018, in favor of Conrad, dismissing the action against him. This timely appeal followed.

**STANDARD OF REVIEW**

This Court explained the standard of review in cases involving a trial court's findings of fact as follows:

5

In reviewing a trial court's findings of fact, appellate court's employ a "manifest error" or "clearly wrong" standard of review. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989) (citations omitted). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. *Id.* "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* Moreover, when findings of fact are based on determinations regarding "credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id. See also Pelleteri v. Caspian Grp. Inc.*, 02–2141, 02–2142, pp. 6–7 (La. App. 4 Cir. 7/2/03), 851 So.2d 1230, 1235.

*Stewart Title of Louisiana v. Chevron, U.S.A., Inc.*, 2014-0774, pp. 2-3 (La. App. 4 Cir. 4/1/15), 216 So.3d 869, 871.

**ANALYSIS**

On appeal, Eugenie asserts that the trial court erred by: 1) ratifying the actions of a mandatary that exceeded the scope of his mandate; and 2) predicating its judgment on incompetent evidence, specifically, hearsay testimony relative to the purported will of a still-living person (Mrs. Dabezies). We find no merit in either of these assignments of error.

***Assignment of Error No. 1***: Ratifying the actions of a mandatary that exceeded the scope of his mandate.

The petition asserts that Conrad acted outside his mandate and participated in unauthorized self-dealing. In support of her action, Eugenie relies on La. C.C. art. 2998, which states: "A mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such contract, he is merely fulfilling a duty to the principal."

6

Contrary to the assertions initially made by Eugenie in this litigation, the evidence demonstrates that Conrad never signed the annual gift giving checks, nor did he cash any checks written to Eugenie. Oliver's trial testimony clarified that starting in 2006, he wrote checks to Conrad according to his mother's wishes. This testimony is bolstered by the fact that Mrs. Dabezies personally wrote checks to Conrad and excluded Eugenie in 2004 and 2005. Finally, there was no evidence presented to support Eugenie's accusation that Conrad induced Mrs. Dabezies to exclude her from the gift giving program, and no evidence that Conrad made donations to himself.

Eugenie also claims that Conrad's deposition testimony denied that she owed him a debt from the failed business. A reading of the deposition reveals that Conrad made no such assertion. He only states that he never expected to be repaid and that he never sought repayment of the debt from his niece. Moreover, Oliver's testimony, Mr. Cavaroc's 2010 letter, and Mrs. Dabezies' last will and testament all substantiate Eugenie's indebtedness to Conrad.

As reflected in its reasons for judgment, the trial court determined that Eugenie's testimony and the evidence presented did not substantiate her claims, and that Conrad did not violate his duties as co-mandatary. As discussed above, the record before us supports the trial court's factual findings. Thus, we find no merit in this first assignment of error.

**_Assignment of Error No. 2:_** Predicating its judgment on incompetent evidence, specifically, hearsay testimony relative to the purported will of a still-living person.

At trial, Conrad's attorney offered Mrs. Dabezies' will to demonstrate her intent as to what she wanted to accomplish concerning Eugenie's debt to Conrad.

Eugenie's attorney objected because it is the will of a living person that has not been probated before a court of law. The trial court allowed its introduction.

At the outset, we note that the proper foundation was laid for the introduction of the will. Oliver, named executor of his mother's estate, identified the will. He stated that he was present when the will was executed in 2003. Additionally, Mrs. Dabezies and her attorney shared it with Oliver. Thus, the will was properly identified and authenticated.

The will was introduced for the limited purpose of establishing Mrs. Dabezies' intent in connection with the gift giving program. This is clearly relevant to the case. The fact that the will has not yet been probated is of no consequence. We find no error on the part of the trial court in allowing the introduction of the will.

**CONCLUSION**

For the foregoing reasons, we find no error on the part of the trial court in dismissing Eugenie's action against Conrad. Accordingly, the judgment is affirmed.

**AFFIRMED**

8